10/24/2025 10:15:59 AM

# Compare Results

| Old File: | | New File: |
|---|---|---|
| **25A457.pdf** | versus | **25A457new.pdf** |
| **9 pages (80 KB)** | | **9 pages (80 KB)** |
| 10/23/2025 3:41:23 PM | | 10/24/2025 10:15:31 AM |

**Total Changes**

**1**

**Content**

1 Replacement

0 Insertions

0 Deletions

**Styling and Annotations**

0 Styling

0 Annotations

Go to First Change (page 4)

# SUPREME COURT OF THE UNITED STATES

———————

No. 25A457 (25–5928)

———————

## ANTHONY BOYD *v.* JOHN Q. HAMM, COMMIS-SIONER, ALABAMA DEPARTMENT OF CORRECTIONS, ET AL.

ON APPLICATION FOR STAY AND ON PETITION FOR A WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

[October 23, 2025]

The application for stay of execution of sentence of death presented to JUSTICE THOMAS and by him referred to the Court is denied. The petition for a writ of certiorari is denied.

JUSTICE SOTOMAYOR, with whom JUSTICE KAGAN and JUSTICE JACKSON join, dissenting from the denial of application for stay and denial of certiorari.

Take out your phone, go to the clock app, and find the stopwatch. Click start. Now watch the seconds as they climb. Three seconds come and go in a blink. At the thirty-second mark, your mind starts to wander. One minute passes, and you begin to think that this is taking a long time. Two . . . three . . . . The clock ticks on. Then, finally, you make it to four minutes. Hit stop.

Now imagine for that entire time, you are suffocating. You want to breathe; you have to breathe. But you are strapped to a gurney with a mask on your face pumping your lungs with nitrogen gas. Your mind knows that the gas will kill you. But your body keeps telling you to breathe.

That is what awaits Anthony Boyd tonight. For two to four minutes, Boyd will remain conscious while the State of Alabama kills him in this way. When the gas starts flowing, he will immediately convulse. He will gasp for air. And

he will thrash violently against the restraints holding him in place as he experiences this intense psychological torment until he finally loses consciousness. Just short of twenty minutes later, Boyd will be declared dead.

Boyd asks for the barest form of mercy: to die by firing squad, which would kill him in seconds, rather than by a torturous suffocation lasting up to four minutes. The Constitution would grant him that grace. My colleagues do not. This Court thus turns its back on Boyd and on the Eighth Amendment's guarantee against cruel and unusual punishment. Because the Court should have instead granted a stay of execution and Boyd's petition for certiorari, I respectfully dissent.

I

Nitrogen hypoxia is a new method of execution. To carry out an execution using this method, prison officials force a condemned person to inhale pure nitrogen gas, which displaces the oxygen in that person's lungs. Robbed of air in this way, the body's instinctual urge to breathe kicks in. At the same time, the mind understands that breathing will result in death. The process takes around 20 minutes from start to completion. See App. 36a–42a (recounting prior nitrogen hypoxia executions taking between 16 and 23 minutes).

Five States have authorized nitrogen hypoxia as a form of execution, though only Alabama and Louisiana have used it to carry out executions so far. Before its implementation, the method was touted by Alabama and other States as a more "humane" alternative to lethal injection because it was supposedly "painless" and would result in unconsciousness within "seconds." Response in Opposition to Application for Stay in *Smith* v. *Hamm*, O. T. 2023, No. 23–6562, etc., pp. 3, 21; *Dunn* v. *Price*, 587 U. S. 929, 930–931 (2019) (Breyer, J., dissenting from grant of application to vacate stay). Yet even before Alabama undertook the first

execution using nitrogen hypoxia in early 2024, serious concerns were raised about the veracity of these claims. See *Smith* v. *Hamm*, 601 U. S. \_\_\_, \_\_\_–\_\_\_, \_\_\_ (2024) (SOTOMAYOR, J., dissenting from denial of application for stay and denial of certiorari) (slip op., at 1–2, 4). Moreover, the method's "details [we]re hazy" because Alabama released only a "heavily redacted protocol" describing the process. *Id.*, at \_\_\_ (slip op., at 1).

Today, we have an actual record of nitrogen hypoxia's use. Together, Alabama and Louisiana have executed seven people using the method, see App. to Pet. for Cert. 25a (App.); *Hoffman* v. *Westcott*, 604 U. S. \_\_\_ (2025), and the firsthand accounts from those executions reveal that nitrogen hypoxia is not at all what it was promised to be.

Start with Kenneth Eugene Smith, the first person to be executed using nitrogen hypoxia in our country's history. When the nitrogen gas started flowing, Smith made "'violent movements'" immediately as he "'gasp[ed] for . . . air.'" App. 36a. His "feet and head left the gurney [and] his arms appeared to strain against his restraints." *Ibid.* Smith convulsed for about two to four minutes, shaking the gurney several times. His wife testified that it was like "'watching someone drown without water.'" Petitioner's Post-Hearing Brief in No. 25–cv–00529 (ND Ala., Sept. 11, 2025), ECF Doc. 87, p. 3. Smith's spiritual advisor, who has witnessed at least five lethal-injection executions, remarked afterward that "'[w]e didn't see somebody go unconscious in 30 seconds. What we saw was minutes of somebody struggling for his life. We saw minutes of someone heaving back and forth. We saw spit. We saw all sorts of stuff develop from his mask.'"[1] He emphasized that "[i]t was the most horrible

_____

[1] R. Chapoco, Kenneth Eugene Smith Executed by Nitrogen Gas for 1988 Murder-for-Hire Scheme, Alabama Reflector, Jan. 25, 2024, https://alabamareflector.com/2024/01/25/kenneth-eugene-smith-executed-by-nitrogen-gas-for-1988-murder-for-hire-scheme/.

thing" he had "ever seen."[2]  Smith was pronounced dead 18 minutes after the execution started.

The State largely blamed Smith for staying conscious.  It insisted that his convulsing was primarily because he held his breath and fought the execution process.  See App. 37a, and n. 24; *Miller* v. *Marshall*, No. 2:24–cv–197 (MD Ala., July 15, 2024), ECF Doc. 70, pp. 1–2, 14–21.  Subsequent executions, however, show that Smith was certainly not the problem.

Alan Miller was executed next.  When the execution began, Miller's "'whole body started to shake very intensely,'" App. 38a, with "'violent convulsions,'" ECF Doc. 87, at 6.  He "'gasped, shook[,] and struggled against his restraints,'" App. 38a, with his eyes open the entire time.  ECF Doc. 87, p. 6.  Miller was pronounced dead after sixteen minutes.  Then came Carey Dale Grayson: For four minutes, he shook "'his head vigorously,'" "'struggled[ ] while clearly still breathing,'" and raised both of his legs far off the gurney as he pushed against the restraints.  App. 39a–40a.  Grayson was pronounced dead after 16 minutes.  This pattern has held steady during the State's subsequent executions of Demetrius Frazier, Gregory Hunt, and Geoffrey West, as witnesses have reported similar observations each time: apparent consciousness for minutes, not seconds; and violent convulsing, eyes bulging, consistent thrashing against the restraints, and clear gasping for the air that will not come.  *Id.*, at 34a, 41a–42a.[3]  Yet, the State has continued to defend the executions as constitutionally permissible despite a readily available alternative.

_____

[2] J. Beck, CNN 5 Things, Jan. 26, 2024, https://www.cnn.com/audio/podcasts/5-things/episodes/146b819c-8f0111eea87667c76723c206.

[3] See K. Chandler, Alabama Executes Man With Nitrogen Gas for 1997 Shooting Death of Store Clerk, Associated Press, Sept. 25, 2025, https://apnews.com/article/alabama-execution-nitrogen-abbee4a788ad61f5b8d7cfe0d7afe992.

## II

Boyd challenged Alabama's use of nitrogen hypoxia under the Eighth Amendment and asked that the State execute him by firing squad instead. The District Court denied Boyd's request for a preliminary injunction barring his execution by nitrogen hypoxia. The Eleventh Circuit denied a stay on the sole ground that the District Court did not abuse its discretion in finding that Boyd's Eighth Amendment claim lacked merit. That was error.

Under *Bucklew* v. *Precythe*, 587 U. S. 119 (2019), whether a method of execution violates the Eighth Amendment turns, in main part, on whether it imposes a "super-add[ition] of terror, pain, or disgrace." *Id.*, at 119, 133 (quoting *Baze* v. *Rees*, 553 U. S. 35, 48 (2008) (plurality opinion); internal quotation marks omitted). To establish that the "State's chosen method of execution cruelly super-adds pain to the death sentence," *Bucklew* instructs that "a prisoner must show a feasible and readily implemented alternative method of execution that would significantly reduce a substantial risk of severe pain and that the State has refused to adopt without a legitimate penological reason." 587 U. S., at 134. *Bucklew* did not distinguish between mental and physical anguish in setting forth this standard. For good reason: As recognized for centuries, a form of punishment can be "cruel" if "'[d]isposed to give pain to others, in body or *mind*.'" *Id.*, at 130 (quoting 1 N. Webster, An American Dictionary of the English Language (1828); emphasis added); see *Watts* v. *Indiana*, 338 U. S. 49, 52 (1949) (opinion of Frankfurter, J.) ("There is torture of mind as well as body; the will is as much affected by fear as by force. And there comes a point where this Court should not be ignorant as judges of what we know as men"). Here, Boyd identified the firing squad as an alternative method by which to evaluate the comparative pain imposed by nitrogen hypoxia.

Before the District Court, the parties presented evidence at a two-day hearing.  The District Court then made the following determinations critical to its analysis.  First, the District Court found, and the parties agreed, that "agonal breathing," which occurs when an individual is close to death and is often characterized by "gasping, muscle jerks, and grunting," is not itself sufficient evidence of pain because it can be involuntary and occur when a person is unconscious. App. 43a–44a.  But the experts on both sides also agreed that severe psychological pain endures after the nitrogen gas is turned on and lasts until a loss of consciousness occurs.  *Id.*, at 51a–52a.  As the District Court saw it, the "key question" was therefore "how long it will take" for a person to lose consciousness during the execution, and the court accepted for the sake of its analysis that this period typically lasts for two minutes, but has extended to four minutes in a prior execution.  *Id.*, at 52a.  The District Court further clarified that even if this period lasted for seven minutes, its conclusion on Boyd's Eighth Amendment claim would not change.  *Id.*, at 53a, n. 34.

Second, the District Court found that to minimize the duration of conscious suffering, the individual must cooperate in his execution.  *Id.*, at 55a–56a.  Holding one's breath or taking short breaths, often the products of an involuntary reaction to oxygen depletion, prolongs consciousness.  *Ibid.*

Third, the District Court found that a firing squad would render someone unconscious in three to six seconds.  *Id.*, at 64a.  Still, the court noted, this period would involve *physical* pain, whereas nitrogen hypoxia would likely inflict *psychological* pain alone.  *Ibid.*  The Eleventh Circuit, for its part, did not rely on this distinction between physical and psychological pain, instead accepting for the sake of argument that nitrogen hypoxia does inflict physical pain too.  *Id.*, at 11a.

On these findings and assumptions, Boyd more than made his case, under *Bucklew*, that nitrogen hypoxia likely

poses a substantial risk of conscious terror and psychological pain and that the firing squad is a sufficient alternative. The District Court, however, justified its contrary conclusion by drawing a false equivalence. In its view, prisoners facing death by nitrogen hypoxia, like all prisoners facing execution, experience distress knowing that death is near. See App. 62a–64a. As a result, distress is an "unavoidable consequenc[e] of capital punishment under any method of execution." *Id.*, at 62a. That the distress continues when the gas is turned on is therefore unremarkable.

That analysis is blind to the reality of what will happen to Boyd in this execution chamber and the additional and unnecessary psychological terror he will experience. Boyd will, of course, experience the same distress that all condemned men suffer in anticipation of their execution by the State. The claim here, however, is that, on top of that ordinary, anticipatory distress, nitrogen hypoxia will profoundly add to Boyd's suffering *after* the execution begins and while it is being carried out to completion. As the District Court assumed, it takes at least two, and could take up to seven, full minutes for someone to lose consciousness—that is, up to seven full minutes of conscious, excruciating suffocation. *Id.*, at 52a–55a. As the State's expert admitted, "a person consciously experiencing the 'primal urge to breathe'" during those two to seven minutes "while knowing that breathing will cause death amounts to severe emotional suffering." *Id.*, at 51a. This superadded psychological torment is both unique to nitrogen hypoxia and goes well beyond what is inherent in any constitutional method of execution. Cf. *Baze*, 553 U. S., at 53 (plurality opinion) (noting that a substantial risk of suffocation violates the Eighth Amendment).

A similar error led the District Court to reject the firing squad as an adequate alternative to nitrogen hypoxia— even while determining that it was "feasible" and could be "readily implemented." App. 66a. According to the District

Court, death by firing squad would not "significantly reduce a substantial risk of severe pain" posed by nitrogen hypoxia because the same anticipatory psychological pain would occur before the execution by firing squad, while the firing squad would add a risk of physical pain after the shots are fired. *Ibid.*; see *id.*, at 63a–64a. Again, however, the District Court ignored that, under its own assumptions, nitrogen hypoxia would superadd up to seven minutes of psychological pain beyond the ordinary anticipatory distress of an execution. Once the execution starts, a firing squad would render someone unconscious in three to six seconds; nitrogen hypoxia, on the other hand, lasts for minutes. See *id.*, at 55a, 64a. There is a significant constitutional difference between three to six *seconds* of physical pain and terror and two to seven *minutes* of conscious suffocation with its associated psychological pain and terror. In gross numerical terms, nitrogen hypoxia risks extending the period of terror up to 140-fold.

Although it is deeply troubling to weigh the associated pain posed by the two different methods against each other, this "comparative exercise" is demanded by the Court's recent precedents. See *Bucklew*, 587 U. S., at 136. Perhaps this unease reflects problems with its doctrinal foundation. See *Glossip* v. *Gross*, 576 U. S. 863, 970–975 (2015) (SOTOMAYOR, J., dissenting). So long as the requirement persists, however, courts must engage in this macabre weighing. Here, the District Court and the Eleventh Circuit failed to recognize the significant differences between the two methods of execution despite the factual record before them. Because Boyd demonstrated that he was likely to succeed on his Eighth Amendment claim, this Court should have granted a stay of execution and his petition for certiorari.

\*     \*     \*

The Eighth Amendment "does not guarantee a prisoner a painless death." *Bucklew*, 587 U. S., at 132.  But when a State introduces an experimental method of execution that superadds psychological terror as a necessary feature of its successful completion, courts should enforce the Eighth Amendment's mandate against cruel and unusual punishment.  Allowing the nitrogen hypoxia experiment to continue despite mounting and unbroken evidence that it violates the Constitution by inflicting unnecessary suffering fails to "'protec[t] [the] dignity'" of "'the Nation we have been, the Nation we are, and the Nation we aspire to be.'" *Smith*, 601 U. S., at \_\_\_ (opinion of SOTOMAYOR, J.) (slip op., at 5) (quoting *Hall* v. *Florida*, 572 U. S. 701, 708 (2014)).  Seven people have already been subjected to this cruel form of execution.  The Court should not allow Boyd to become the eighth.